Our next case for today is case number 415-0043. People of the State of Illinois v. Anthony Stennis. And for the appellant we have Mr. Ryan. And for the appellee, Ms. Burgess. Is that right? I didn't say Burgess. I said Burgess. Right, Burgess. I want to say it correctly. You may proceed, counsel. Marty Ryan You may please the court. Counsel, I'm Marty Ryan from the Office of the State Appellate Defender and I'm here on behalf of Mr. Stennis. As you can see, I'm not James Ryan Williams who filed the brief. He is currently very ill with something nasty and contagious. Judge Stennis Well, wish him well for us. Marty Ryan I will. Judge Stennis Thank you for coming. Judge Stennis I'll be a bit better soon. Marty Ryan He's probably on the upswing here. It's quick but vicious. I picked up this case on Monday, so bear with me. I'm going to focus on the gun charge, the multiple possession of a weapon by felon charge, and touch upon arguments 1 through 3 and stand on the rest. I'll try my best to answer any questions. The general background is Anthony was charged in this case with one count of possession of a weapon by felon and two counts of resisting arrest. He went to a jury trial. The backdrop is that in response to an anonymous 911 call, police officers went to a place called Brandon Court whereupon they see someone who takes off running from them. They chase him, it's Anthony, and they eventually catch him. They backtrack and along the area of the ground in this high crime area, they find a gun. Our first argument is that this weak evidence is not proof beyond a reasonable doubt because there's no link to Anthony with the gun. We have basically flight and we have a gun in the high crime area. No one sees Anthony with the gun. No one sees Anthony throw the gun. There's no DNA on the gun. There's no fingerprints on the gun. There's no evidence that he wore gloves or there was any weather conditions that would explain deterioration of prints. Was there evidence that the gun was actually located in his flight? It was near the path. It was near along the path where the flight took place in a public area. Yes. And so you have these buildings, kind of like duplexes I guess may be the best way to describe, and so you have a gate, an area, a sidewalk area, then a unit, then a gate, sidewalk area and a unit. So am I correct in that the officer ran down the side, ran up, however you want to describe it, ran up the sidewalk between one area, between two units, and that the defendant ran up the sidewalk in a completely different, between two, there was one unit in common. So here's a unit, the officer's coming up this side, and the defendant is coming up on this side. Is that right? Your Honor, I actually do not know the answer to that one. Okay. The specific details of the chase. I do know that they saw him when the officer pulls up in the car. He sees Anthony take off running, so he goes after him in that direction. He does, the officer does say that he did lose sight of Anthony for a brief moment or two, and perhaps, you know, of course the state's theory would be that's when the gun would have to have been discarded, and that he apparently wasn't carrying it in his hand because the officer never testified that he saw Anthony with the gun. But anyway, if the theory is that it's recently discarded and the man's not wearing gloves, there's a fair chance, or at least there could be a chance, that there could be fingerprints or DNA on it. And again, this is not, this is a high crime area. So we have a gun near the area of the chase, and we have flight. But, and so we'd ask that you vacate the conviction outright. But in the alternative, if this Court finds that that evidence at least meets the bare minimum of the rational trial or fact standard, is our argument, taking arguments two and three together, since they substantially overlap, that under any standard, Anthony was denied a fair trial by both the double hearsay and the improper use of that hearsay substantively to supply the missing link between him and the gun. Is that where the cop says what the phone call was? Yes. Yes, in this case, I guess I was, yes. The police officer, Officer Graves, the first witness after, there's a pretrial objection to getting this double hearsay, because you have what the caller calls a distaste, after tells Officer Graves. Counsel objects before trial and says, this is hearsay that shouldn't come in, and it's also not necessary to prove why they chased him, because headlong flight will give you reasonable suspicion. So the police had every right to chase him upon him running away. And the State says, well, it sounds, it seems like hearsay to me. And so the State says, well, we wouldn't be offering it to show that an individual who met this description had a firearm. We're only offering it, we're simply offering it, let me get the quote right, we are simply offering it to show the effect it had on the officer, to show why they were there. So the State is now centering it for a non-hearsay purpose, not for the, not to tie it to the idea of the man with the gun, but to show why they were there and gave chase. Counsel complains, and I read it rightly so, that this could still be viewed as evidence that Anthony possessed the gun. And the Court agrees that it's somewhat, that it's somewhat, that it's more prejudicial than probative as to details, and the State suggests something like, why don't we say he generally fits the description given in the 911 call. So the State's argument was, we needed this to explain police conduct. To show why they were pursuing the individual, is the quote, yes. And then it was argued substantively in closing argument? It was put in substantively in trial and then three times argued substantively in closing argument, yes. The reason I mention all this is, in 1989, this Court wrote the following about a case out of Adams County. The admission of the officer's testimony containing what a third party told him was error. The objection was first raised to the officer's testifying about what he was told by the confidential informant. The Court should have conducted a hearing out of the presence of the jury to determine both the scope of these third party out-of-court statements and the need for the jury to hear them. Scope and need being italicized. If such a hearing had been conducted in this case, the Court could have directed that the improper portions of the officer's testimony be deleted, thereby permitting the State to provide its legitimate explanations for police conduct while protecting the defendant against prejudicial hearsay statements. That's the famous, I would have thought, People v. Cameron case that seems to be famous for having been ignored for these last 28, 29 years, despite being discussed repeatedly. And here is the Third District, Justice Schmidt, in 2011, citing Cameron, as I've had occasion to do several times but doesn't seem to be getting into the psyche of trial judges or counsel, as following. When faced with the prospect of hearsay testimony to explain police conduct, a brief Cameron hearing makes perfect sense. A hearing outside the presence of the jury. It'd only take a few minutes. The Court should simply ask the prosecutor what witness, C.I. or otherwise, testimony you intend to elicit through a police officer to explain police conduct. The prosecutor answers and then the Court can quickly decide how much of that is actually necessary to explain why the police did what they did and exclude unduly prejudicial testimony the jury might reasonably misuse to determine defendant's guilt, such as identification by third parties that never testify. This very brief process will protect both the State's right to explain to a jury why the police did what they did in any given circumstance and, at the same time, protect the defendant's right to a fair trial and his or her right not to be convicted with the use of an explanation by the prosecutor that he or she is only offering the testimony to show why officers did what they did should not be the end of the discussion. But we have no real discussion following Cameron here. We have some musing about it. But it seems to me, going back now 20 years as trial stuff, to the extent the police need an explanation for why they did what they did, it seems to me to be a little bit more complicated than that. I agree, Your Honor. It would have been completely compliant with the investigatory exception to the hearsay rule if they had Officer Graves testify to just that. I got a dispatch. As a result of that dispatch, I went to Brandon Court. What did you see there? Or you could even say a suspicious guy. How about that? As opposed to... Match the description of a guy with a gun. And in Cameron, we had bad testimony as well. You see a lot of records as we do. Have you ever seen a record where someone actually referred to a Cameron hearing? I have not, Your Honor. This is a 1989 decision of this Court. Cited several times in decisions I wrote, several times with Justice Wilson, the First District, Justice Smith, the Third District. Cameron hearing. Okay. I'll let you go on with your argument and I'm set. Did we have a limiting instruction? No. No one was on the ball enough to ask for that or see if that at all. But at least the warranted that it wasn't going to be used to show that an individual met this description with a firearm. And so it wasn't supposed to be admitted for that purpose at all. And yet that's... Even Officer Graves' testimony, there's a guy at Brandon Court armed with a gun, says the dispatcher, did you see an individual met the general description of the individual you were looking for? Yes. And then commingles it. Opening right off the bat and closing argument, gets to Brandon Court, quote, he saw an individual who matched the description given of the individual who had the firearm. That person was the defendant. During rebuttal, it was, quote, uncontroverted that the defendant matched the description of the man with the gun. And then something similar, almost the last thing that the prosecution... No objections to any of this? No. No comment by the Court? No. Everyone's asleep at the switch. I mean, I understand it's difficult to do trials. It's easier to read transcripts and pick out error. You're correct. But on the other hand, this is not a difficult concept either, given that it's just, you don't... You can get it in to show why they did something, but you don't bring it into the substance of the hearsay. At any rate, if there was any doubt that the jury here actually considered the 911 call, we have only to consider the jury's first note, which says, we're unanimous on the resisting charges. What if we're not unanimous on the gun charge? What happens then? And can we see the 911 transcript? So they're saying, basically, they're now down to weighing only the gun, and they want to know more details about the 911 transcript because they think they should consider that in determining whether Mr. Senes is the guy with the gun, the dispatch. You know, in this close case, you know, under... Well, when the testimony came in about the call, let me guess, there was no limiting instruction, was there? No, there was not. So then the jury, thinking that it was properly performed to consider, would be correct. The jury did nothing wrong in violation of their instructions. They would know. And this limiting would have, I believe, occurred off the record when the state only offered it for the limited purpose that was pretrial. So, Your Honors, under any standard, this is, you know, this is reversible error in this closely balanced case where you've got a positive evidence that's basically flight and a gun that's not otherwise attached to Mr. Senes, and this is the only direct link to it. And so for those reasons, if there are no further questions, we would ask this Court to vacate its conviction on the gun charge outright or on the alternatively reverse or neutral. Thank you, Counsel. Just one quick thing. He was found guilty of resisting, was he not? Yes, we're not. We didn't raise any issues to that. Okay. Just want to be sure. Ms. Burgess. May it please the Court? Counsel? Good afternoon. My name is Amelia Burgess and I'm representing the people of the State of Illinois today. Since Counsel focused on the first two of the arguments presented in the brief, I will do the same. With regard to the sufficiency of the evidence, there is no question here that the evidence before the jury was primarily circumstantial in nature. However, that is sufficient for a jury to find beyond a reasonable doubt that the defendant was guilty. And the Court's role here today is more of a, in more of a colloquial sense, looking at quality control. Can you follow the evidence here when looking at it in the light most favorable to the prosecution in a way that leads to a rational and logical outcome? It is not about reexamining the evidence, but just making sure that the jury had sufficient evidence from which they could reach this reasonable conclusion, even if the Court might feel that it would have reached a different conclusion. And in this particular instance, there is a clear chain of evidence here leading to finding that the defendant was guilty beyond a reasonable doubt with regard to the charge for possession of a weapon by a felon. The police showed up upon a report that there was an individual with a weapon in the area. The defendant immediately began to run, despite being asked by the police officers to stop. The police officer's testimony was that there were no other individuals in the area that came to their attention in the same manner. Now, was it that definitive or wasn't it more like, I don't recall anybody else being out there? I believe the exact testimony was somewhat equivocal in that when the detective was asked were there other people in the area, his initial statement was, I was focused on the defendant, but then he answered, yes. So I think allowing that to be viewed in the light most favorable, the answer was yes, that the defendant was the only individual in the area that came to their attention as the potential individual who was carrying the weapon on that day. He ran. The police engaged in a pursuit. There were several officers present, and they were eventually able to apprehend him, despite again asking him to stop multiple times. Let's talk about his path. My understanding is that the officer who pulled up and first observed him and caused the defendant to take off running, that he ran up the sidewalk between units 49 and 50, and that the defendant took off and actually ran between units 51 and 52, which would explain why there was a point in time where the officer could not see him because the officer would have had buildings between them as they ran up a parallel basically track. And so the gun is found near the area between, in the parking lot near the area between 49 and 50, which is the path of the officer. Given the defendant ran between 51 and 52, what evidence is there that the defendant was ever in the area where the gun was located? Yes, Your Honor. And that on the whole is consistent with my understanding of the record as well, with one additional caveat. And that is the gun was found near a gate. In order for the defendant to be on the other side of that fence and to cross the road there on the other side of those buildings, he had to have gone through the gate. And so that was within his path of travel, which is why the police officers retraced his path in that direction. And then when they found the weapon, it made it clear to them that he was the individual responsible for having had the weapon and that he dropped it there while he was running. And you say they retraced his path. They retraced the defendant's path or the officer's path? Your Honor, it's my understanding from the record and the testimony of the officers that they knew the path he had taken. Obviously they were aware which buildings he had run through because they testified to that fact. And then they retraced what they knew his steps to be. Again, it is my understanding that that gate within the fence created a bottleneck. So while there were many paths to get to the gate, there was only one path through it. But no officer observed the defendant with the weapon or observed the defendant drop the weapon. You have an officer running parallel to him. I'm having difficulty understanding how that officer would not have seen him drop the weapon with the weapon because basically what you're saying is the defendant ran between 51 and 52, then turned left, ran past 51, ran past 50, climbed over the gate or ran through the gate, and dropped the gun in the parking lot. All while supposedly this officer who's running parallel to him sees none of this. Your Honor, I think there might be many possible explanations why the officer did not see that. Perhaps he was watching where he was going, focused on other items. That particular fact alone may not have been enough for a jury to find guilt beyond a reasonable doubt. When looking at all of the factors in conjunction with each other, so the fact of flight, which under the circumstances a jury can use to tend to prove that he was indeed guilty, the fact of flight, the fact that the gun was found along the path of travel, and the fact that when the crime scene technician came to examine the weapon, he found that it had been recently dropped there. That as well as the testimony that there were no other that there was sufficient evidence here to convict beyond a reasonable doubt. Do we know whether or not there is a gate between 51 and 52? Your Honor, my memory of the record is that this was the only gate to go from one side of the fence to the other. Although at this point in time I am not certain that the officers when they testified completely ruled out the presence of other possible gates. But I believe my recollection of the testimony was that the officers were very certain that that was the path of travel taken by the defendant. Obviously not all questions at this point can be answered in retrospect with regard to all the nuances and the details of who did what when. Again, the question here is was it reasonable for the jury, when viewing the evidence in the limelight of the prosecution, for the jury to come to this particular conclusion? The other aspect that defense counsel spoke about was the testimony and whether or not this was impermissible hearsay or if the testimony regarding the 911 tape fell under the investigatory procedure exception to the general hearsay rules and the concerns about the confrontation clause. Here it is helpful to look at the actual substance of the 911 call, the ruling of the trial court, and then the testimony heard by the jury. The actual 911 call was in much more detail than what the jury heard. It actually provided a physical description of the defendant, that he was a black male wearing black clothing with braided hair and white shoes. The jury never heard that. And the trial court rightfully said that that particular description went too far. What did the jury hear? The jury heard simply there was a man, a report of a man with a gun, which actually was a narrower testimony than what the judge initially had ruled was permissible. When you heard Mr. Ryan's discussion about what the argument was, what did the argument refer to? The argument referred to, I apologize, Your Honor, are you referring to the argument of counsel prior to the trial? Closing argument. Oh, in closing argument? Yes. Yes. The statements made at closing argument were slightly different again. Their counsel for the state stated that the defendant quote matched the description. Of course, the jury never heard and was never made aware of a more accurate description had been provided. The only testimony the jury heard was that there was a report of a man with a gun. They didn't hear what his race was, what his color of hair was. So is that proper argument by the state then? It was perhaps at most an overstatement of what the evidence had shown. It was permissible for the attorney for the state to discuss what the evidence was presented at trial. Well, the premise was it was presented not as substantive evidence, but just to explain police conduct. Wasn't that it? You are correct, Your Honor. And we've talked about the possibility of limiting instruction. Clearly, if the defendant had been asked for that in this particular case, it would have been appropriate for the trial court to give it. However, the court did not... Then would the argument have been improper? At that point in time, if counsel had believed it was exceeding the scope of why that evidence was admitted, it would have been appropriate for counsel to object. Counsel in this case did not object. And keeping in mind too, the jury was not left without any instruction with regard to its view of what was told to it during closing argument. The jury was properly instructed that argument is not evidence and that the jury should disregard any argument that was in conflict with or not consistent with the evidence. It is reasonable here where the jury was properly instructed to conclude that the jury did indeed follow that and found and potentially to the extent that it overstated that particular evidence and what the testimony was, disregarded it. And we do have some evidence that that is the likely outcome here. If the jury had truly taken the state's arguments to mean that a more detailed description at one point in time had been given and that the defendant accurately matched that description, one would think that the jury's deliberations would have been shorter in nature and they would have had fewer questions about what to do when it was clear they were having difficulty reaching a unanimous verdict on that particular issue. When the trial court permitted this reference to the description reported over police radio, did the court indicate at that time it was going to be received for a limited purpose? The court did acknowledge that its actions were restricted by maintaining the investigatory exception, that it could not exceed that. But the purpose of that testimony was to explain the officer's actions, not to provide an actual description of the defendant in a way that he would be identified. Well, because the argument you just made is a bit troubling. If the court made clear it was being received for a limited purpose, then the burden is on the prosecutor not to argue it substantively beyond that limited purpose. And it doesn't make any difference whether or not the defense attorney objected. Yes, Your Honor. However, the burden is on the defendant to place an objection where the argument goes beyond the bounds of what is permissible. However, even within closing argument, great latitude is given, and any errors will only be reversible where it goes beyond mere misstatements or slight overstatements of the facts. Well, the fact that the court need not and should not have given the state the right leeway to say even what limited statement it did, a man with a gun, that was entirely unnecessary for purposes of explaining why the police went there. The fact that the prosecutor then expanded upon this, about matching the description as closing argument, just exacerbated the problem that the court created in the first instance. Perhaps, Your Honor. However, the trial court's actual order here was that the officers could testify that the individual here matched the description given to the 911 caller. Why? Let's go back to that point in time. How was that necessary in any way for the case? Your Honor, it may not have been necessary in any way, shape, or form. Fortunately, the jury did not hear that actual testimony from the officers. Their testimony was focused on there was a report of a man with a gun. The reason I bring up the trial court's actual order is because it makes the state's argument in closing consistent with that order. So the state in closing did not exceed in the order or did not violate any of the court's prior orders. The judge should have said, your concerns are well taken, Mr. Prosecutor. Don't go into it at all. I'll let you bring out that they received a call of a suspicious person or worse to that effect. That's one possible way the trial court could have gone. How is it consistent with the judge's order to say he matched the description of the man with the gun from the 911 call? How is that consistent when not only did the judge say you can't use it for substantive evidence, but the prosecutor said we're not offering it for that, for identification. We're only offering it to show why the officers did what they did. How is that consistent? Your Honor, the trial court's actual ruling is that the state could provide testimony that the 911 caller reported a black male in dark clothing. For what purpose? Does the trial court indicate the purpose? For the purpose of investigatory procedures. So there, perhaps, in hindsight, the state could have been more explicit in its intent with what it was arguing. And that will always be the case with closing argument. Which, again, the question at the end of the day is, did that somehow render this process unfair or obtain a result that was not otherwise going to be obtained? In this particular instance, because the jury was well instructed as to the nature of closing arguments, it requires this court to make a great deal of assumptions about what the instructions that were given. As a result, it is unlikely that this changed the ultimate outcome of this case. We can see from the jury's deliberations that they were very careful and considerate, that they struggled with this particular aspect of the charges against the defendant, but yet they came to a unanimous verdict, and one that they all, when polled, agreed to in front of the court. So at the end of the day, they all agreed to this particular verdict and believed it was appropriate. Keeping that in mind, just briefly, this makes this case very different than the case cited by the defendant with regard to the investigatory procedure, and when it is exceeded by the testimony given. And that's the case of People v. Jura. There, there were specific identifiers given. And I believe Justice Steigman, on the cases you quoted slightly earlier, with regard to the Cameron case, the language you used referred to identifiers and the concerns when identifiers were used. Age, height, build, race, tattoos, things that would allow a jury to say that was the person at fault here, regardless of any other information. Here we don't have that. Here we need each piece of information to build on itself in order to reach the conclusion that the defendant was guilty beyond a reasonable doubt. As a result, any single piece of evidence in and of itself is not overly prejudicial. As a result, the State would respectfully request that the court uphold the verdict in this case and affirm the judgment against the defendant, because on the whole, the defendant received a fair outcome based on the evidence before the jury, and the evidence the jury heard did not exceed what was permissible under Illinois law. Thank you. Any rebuttal, counsel? In response to Your Honor's question about the gate, at least this, and this is from Mr. Williams' brief on page 6 of the Statement of Facts, the only opening in the fence is a gate between 49 and 50 Brandon Court, which the chase proceeded through, and the page cited is Volume 12, page 26. So apparently Your Honor is correct that this is the only gate, and it's the one that was on the side where the officer was, which even further weakens the State's case, because the gun would have been presumably there already by the time they catch the guy and they backtrack if it was his. Concerning counsel's representation of what the jury heard, it's not true. They didn't just hear that it was a man in Brandon Court armed with a gun. Did you see an individual that met the general description of the individual you were looking for? Officer Graves says yes. We have the three specific references. That was during his direct? Say again? During his direct examination? Yes, yes. First witness, direct examination. Thank you, Your Honor. And we have the three times that they use it in the opening, in the opening statement. Who was defense counsel? I think her name is Lindsay Evans. And I believe it's one of the, the prosecutor is one of them is named Noel, but I don't know which one. I believe there's more than one attorney named Noel in this area. This was Judge Bells? Judge Bells, yes. Anyway, it was specifically offered to show, you know, as to counsel's point about juror and that there were more details there, I think it's a distinction without a difference. The investigatory hearsay exception generally doesn't let in any substance at all. And the conclusion that he matches the description is more or less tantamount to saying, you know, you know, five foot ten black guy with, you know, with a tattoo matches the description. I'm not sure that there's much of a difference to be made between three details and the conclusion that would follow from this. Well, the significance is that whether he provided details or not, apparently there were some details, according to the officer, that this guy matched. According to the 911 call? Yeah. Yes, but according to the officer, he matched the description of the call. Yes, that's what the officer testified to after the state offered that. So the jury wouldn't have heard what those were, but would have heard his conclusion to that effect and no reason to doubt it. Yes, yes. And, you know, and the fact that, you know, and again, the fact that the state here specifically said we wouldn't be offering it to show that an individual met the description and had a firearm to then say, well, because the defense counsel doesn't object, that somehow that transforms that into a proper argument. Was that the state's first witness? Yes. The officer? The officer's witness. I believe it was his first witness. The jury instructions here about arguments not being evidenced would have done nothing to tell the jury, you can't consider the 911, any substance of the 911 call for anything other than why the police are there, including the description of the gun. Those instructions have no logical tendency to doubt. But the jury didn't hear that instruction in any of it. Well, they would have gotten the general instruction that arguments are not evidence, but they wouldn't have gotten anything that would have helped them. But the jury heard no evidence that they were told was offered for a limited purpose. That's correct. That's correct. And finally, as to counsel's point that the jury clearly didn't consider it, I would say that that jury's first question actually completely contradicts that claim. We're done with the resisting. We're unanimous. We're not unanimous on the gun charge. Can we see the 911 transcript? I don't know what clear statement that they were actually considering. If there's no further questions? No. Thank you, counsel. We'll take this matter under advisement and be in recess.